UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| | |
|---|---|
| DUANE BURNETT GRADDY, JR. )<br>Parent of S.G., a minor )<br>)<br>    Plaintiff, individually on behalf of )<br>    S.G. and all other similarly )<br>    situated )<br>)<br>v. )<br>)<br>BLUE CROSS BLUESHIELD )<br>OF TENNESSEE, INC. )<br>)<br>    Defendant. ) | Judge Mattice<br><br>4:09-cv-84 |

## **MEMORANDUM AND ORDER**

Defendant Blue Cross Blue Shield of Tennessee, Inc.'s ("Blue Cross") Motion to Dismiss [Court Doc. 4] and Plaintiff's Motion for Class Certification [Court Doc. 12] are presently before the Court. Plaintiff's monetary and declaratory claims are asserted pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. 1001 *et seq.*, the Tennessee "Autism Equity Act," T.C.A. 56-7-2367, and the Tennessee Consumer Protection Act, T.C.A., 47-18-101, *et. seq.* and jurisdiction over this action arises under 28 U.S.C. 1132(e)(1), 28 U.S.C. 1132(f), and 28 U.S.C. 1367.

For the reasons explained below, Plaintiff's Motion for Class Certification [Court Doc. 12] is **DENIED** and the Court will **RESERVE RULING** on Defendant's Motion to Dismiss [Court Doc. 4.]

## I. LEGAL STANDARDS

### A. Motion to Dismiss Standard

In *Ashcroft v. Iqbal*, the Supreme Court of the United States held that to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). This new pleading standard was first announced in *Bell Atl. Corp. v. Twombly*, an antitrust case. However, in *Iqbal* the Court declared the *Twombly* standard would henceforth apply to "all civil actions." *Iqbal*, 129 S. Ct. at 1953 (*quoting* Fed. R. Civ. P. 1).

In *Iqbal*, the Court explained that there are two "working principles" governing a motion to dismiss. *Id*. at 1949. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (*citing Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (citation omitted) (alteration in original)). The Court emphasized that legal conclusions couched as factual allegations do not satisfy a plaintiff's burden to plead "sufficient factual matter" in its complaint. *Id*. at 1949-50.

The second principle of *Iqbal* is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949 (*citing Twombly*, 550 U.S. at 556). The Court explained that determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950 (citation omitted).

Together, *Iqbal* and *Twombly* form a substantial departure from the traditional standard governing motions to dismiss as set forth by Justice Black in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). *Conley* admonished courts to dismiss claims only if "it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." *Id*. at 45-46 (emphasis added) (footnote omitted). After *Iqbal*, however, if "the well-pleaded facts do not permit the court to infer *more than the mere possibility* of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" 129 S. Ct. at 1950 (*quoting* Fed. R. Civ. P. 8(a)(2)) (emphasis added).

### B.  Motion for Class Certification Standard

Before certifying a class action, a district court must conduct a "rigorous analysis" into whether the requirements of Rule 23 have been satisfied. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc). Under Rule 23(a), a party seeking class certification must show that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class,

-3-

and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to the prerequisites set forth in Rule 23(a), a party seeking class certification must satisfy one of the three subsections of Rule 23(b). Here, the Plaintiff has moved for certification under Rule 23(b)(2), which demands a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

## II. FACTS

### A. Plaintiff's Allegations Against BCBST

Plaintiff Duane Burnett Grady Jr. (hereinafter "Plaintiff") is, and was, at all relevant times, a "member," "participant" or "beneficiary" within the meaning of the Employment Income Security Act of 1974 (hereinafter "ERISA"). (Court Doc. 1, Compl. ¶ 8.) Plaintiff is the parent and legal guardian of the minor child, B.G., who is insured as a dependent beneficiary under a BCBST heath plan and has been deemed a "member" by BCBST. (*Id.* ¶¶ 9-10.) BCBST acted as an insurer and third-party claims administrator for various insured and self-funded employee benefit plans (hereinafter "the Plans") and also acted as the insurance provider and claims administrator providing health insurance benefits to various employee welfare plans." (*Id.* ¶¶ 16-17.) BCBST "is a fiduciary, as defined by ERISA, as it was responsible for determining the eligibility of participants and beneficiaries for benefits under the Plans under 29 U.S.C. § 1002(21)(A)." (*Id.* ¶ 18.)

Plaintiff contends that BCBST wrongfully refuses to provide or allow for coverage for scientifically validated and beneficial treatments for Autism Spectrum Disorder (hereinafter "ASD") from which the B.G. suffers. (*Id.* ¶ 11.) Specifically, Plaintiff contends that BCBST's health insurance plan should provide coverage that allow a beneficiary suffering from ASD to receive "Applied Behavior Analysis." (hereinafter sometimes "ABA") (*Id.*) Prior to initiating the initial action, Plaintiff "exhausted all required administrative grievance procedures" as required by 29 U.S.C. § 502(a). (*Id.* ¶ 14.)

Plaintiff contends that BCBST and its related entities "have established and carried out a deliberate company-wide policy to deny all claims for ABA treatment, even though it knows that the terms of its Plans provide coverage for the treatment." (*Id.* ¶ 20.) Plaintiff further contends that BCBST's practice "constitutes a violation of its fiduciary duties to [P]laintiff and a class of persons similarly situated to fairly and properly construe and interpret the Plans' language for the 'exclusive purpose of providing benefits to participants and beneficiaries' as is require of claims administrators, insurers, and fiduciaries under ERISA, 29 U.S.C. § 1104(A)." (*Id.* ¶ 21.)

Under the terms of the subject health care service plan, as set forth in its "Evidence of Coverage," BCBST provides a listing of "eligible services" which include treatments for behavioral health, namely, "Medically Necessary and Appropriate treatment of mental conditions resulting from abnormal functioning of the mind or emotions and in which psychological, emotional or behavior disturbances are the dominant factors." (*Id.* ¶ 81.) Such coverage encompasses the "treatment of medical conditions underlying or resulting from, behavioral health disorders." (*Id.*)

Certain plans, such as the plan under which the Plaintiff is a participant, also includes a Behavior Health Services Rider ("Behavioral Health Services Rider"), which provides a "program of Coverage for inpatient and outpatient services for Medically Necessary and Appropriate care and treatment of behavioral health disorders." (*Id.* ¶ 81.) Under the Behavioral Health Services Rider, "benefits are available for Medically Necessary and Appropriate treatment of mental health … disorders (behavioral health conditions) characterized by abnormal functioning of the mind or emotions and in which psychological, emotional, or behavior disturbances are the dominant features." (*Id.*) The Behavioral Health Services Rider provides for numerous exclusions, but ABA treatment for ASD is not referenced in the list of expressly excluded types of care. (*Id.*)

BCBST's Evidence of Coverage "states that Medically Necessary services are those which have been determined by the Plan to be of proven value for use in the general population." (*Id.* ¶ 83.) To be "Medically Necessary" a service must: (1) have final approval from the appropriate governmental regulatory bodies; (2) have scientific evidence permitting conclusions concerning the beneficial effect of the service on health outcomes; (3) improve net health outcome; (4) demonstrate the improvement outside the investigational setting; and (5) not be an experimental or investigational service. (*Id.*)

Plaintiff contends that BCBST "has orchestrated a company-wide policy to unduly hamper the processing of claims in violation of its fiduciary obligations and those regulations promulgated by the [United States] Department of Labor." (Compl. ¶ 88.) Specifically, Plaintiff alleges that BCBST: (1) uses a host of improper procedural denials initially to deny those claims such as telling parents the claims were denied owing to a failure to "properly code" the treatment; (2) deliberately sends parents to multiple claims

-6-

departments and routing their calls to several different claims adjusters many of whom feign any knowledge of previous information submitted in support of the claims, effectively forcing the claimants to "start over" each time they submit a claim for reimbursement or seek preauthorization for treatment; (3) routinely provides incorrect and invalid reasons for denying coverage, including reference to the exclusions to the Evidence of Coverage that do not explicitly reference ABA before settling on the "investigative and experimental" exclusion often as its "final and binding determination" and after the parents have rebutted the prior reasons for the claims denials; (4) prohibiting clinicians from creating diagnostic evaluations with specific treatment recommendations for ASD that families might use to seek treatment from defendant; (5) provides speech therapy and occupational therapy to members for other physical and mental conditions, but insists that autistic children seek those services from publicly-funded school districts and regional centers for people with such disabilities, thus directly making taxpayers pay for treatment which BCBST is responsible; (6) refuses to determine individually whether a particular medically appropriate treatment will benefit a particular autistic child; instead, BCBST routinely and systematically, as a matter of corporate policy, denies treatment for ASD; (7) forces families to submit a written appeal for each individual claim denied in Blue Cross' Explanation of Benefits forms, which results in multiple administrative appeals; (8) eliminates from consideration any favorable medical evidence rebutting Blue Cross' opinions that ABA is an experimental or investigative therapy; and (9) routinely denies pre-certification or pre-determination requesting in order to deter participants from seeking ABA services. (*Id.* ¶ 88.)

Plaintiff brings the instant case as a class action against BCBST pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class consisting of all persons who are participants in or beneficiaries of an employee benefit plan administered by or provided by defendant and were denied coverage for ABA treatment to an insured person diagnosed with ASD. (Compl. ¶ 91.) In the Complaint, Plaintiff defines the members of the class as follows:

> All individuals who, on or after August 13, 2003, were covered by a BlueCross BlueShield of Tennessee, Inc. policy of insurance and who seek or have sought pre-certification or pre-determination, or who have made or will make a claim to Blue Cross Blue Shield of Tennessee for Applied Behavioral Analysis treatment for Autism Spectrum Disorder, which was denied on the grounds that such treatment is deemed by BlueCross BlueShield, Inc. to be investigative or experimental and/or was not provided as such treatment is provided to other persons having neurological disorders.

(Compl. ¶ 104.) In Plaintiff's Motion for Class Certification, however, the putative class is defined as "[a]ll persons who are participants in or beneficiaries of an employee benefit plan administered by or provided by Defendant and who have been denied coverage for ABA treatment to an insured person diagnosed with ASD. (Court Doc. 15, Pl.'s Br. in S. Mot. Class Cert. at 2.)

Plaintiff contends that BCBST "wrongfully denied plaintiff, the class members, and their dependents coverage for ABA treatment" on a "bad faith basis that it is 'experimental' or 'investigative'" and "on other baseless grounds, including intentionally misconstruing the terms of the Plans." (Compl. ¶¶ 107-110). Plaintiff further contends that such wrongful denials violated BCBST's duty to provide a full and fair review of the decision to deny benefits, in violation of 19 U.S.C. § 1133(2). (*Id.* ¶ 112.) Plaintiff also contends that

BCBST failed to "exercise the utmost loyalty and care of a prudent person engaged in similar activity under prevailing circumstances, in violation of ERISA." (*Id.* ¶ 113.) While Plaintiff has exhausted his administrative remedies, he contends that the remainder of the class members should be excused from exhausting their administrative remedies given "[D]efendant's policy and practice of denying coverage for ABA," because "it would be futile for the remainder the class to exhaust their administrative remedies." (*Id.* ¶ 114.)

In Count I of the Complaint, Plaintiff asserts claims for recovery of full health care benefits against BCBST pursuant to 29 U.S.C. § 1132(a)(1)(B). (Compl. ¶¶ 115-138). He contends that "BCBST's denial on the ground that the ABA treatment was otherwise not encompassed by the terms of the Plan is a violation and ERISA" and its "denial on the ground that the treatment was experimental and investigative is not based on deliberate principled reasoning nor substantial evidence in violation of the Plan and ERISA." (*Id.* ¶¶ 128-130.) As a result of such wrongful denials, Plaintiff contends that he and the class members "are entitled to immediate payment of past due benefits, and they are also entitled to clarify and enforce their rights to payment of future benefits through the entry of an injunction." (*Id.* ¶ 139.)

In Count II of the Complaint, Plaintiff requests, on behalf of himself and all members of the class, a full and fair review and proper notice of the reasons for the denial of their claimed benefits under ERISA, pursuant to 29 U.S.C. § 1132(a)(3). (Compl. ¶¶ 140-149.) Plaintiff and the class members seek: (1) an Order enjoining Defendant from denying coverage for ABA treatment on the basis of the investigative or experimental exclusion; (2) an Order enjoining Defendant from denying coverage for any ABA treatment provided to other persons with neurological disorders; and (3) other appropriate equitable relief

necessary to redress Defendant's violation and to enforce the law and the Plan. (*Id.* ¶ 149.)

In Count III of the Complaint, Plaintiff seeks, on behalf of himself and all members of the class, all necessary, proper, and appropriate equitable relief to correct Defendant's breaches of its fiduciary duty toward members of the class, including a judicial finding that Defendant wrongfully denied benefits and to hold Defendant personally liable for the re-administration or repayment of these claims. (Compl. ¶¶ 150-155.) Plaintiff cites the following practices as examples of Defendant's breach of its fiduciary duties: (1) BCBST is operating with an inherent structural conflict of interest by acting as both administrator and insurer of certain Plan members' benefits and this has affected the unbiased decision making of the Defendant; (2) BCBST is operating under a conflict of interest when it administers self-funded plans by denying claims of those participants because of its steadfast refusal to pay claims under its insured plans; (3) BCBST's internal file reviewers refuse to consider or credit any favorable medical documentation demonstrating the validity and mainstream nature of ABA treatments for the express purpose of generating internal reports and opinions used only to deny valid claims; and (4) BCBST repeatedly fails to abide by the Department of Labor ("DOL") regulations governing the administration of group long-term disability claims by, among other things, creating numerous internal obstacles to frustrate a claimant's ability to pursue their claims and unduly hampers the processing of claims. (Compl. ¶ 152.)

In Count IV of the Complaint, Plaintiff asserts an action for declaratory relief arising from Defendant's alleged violation of Tennessee's "Autism Equity Act," which provides for the "benefits and coverage for treatment of autism spectrum disorders that are at least as

-10-

comprehensive as those provided for other neurological disorders." (Compl. ¶ 156-169.) Plaintiff contends that BCBST has failed to provide Plaintiff, and individuals similarly situated, coverage for their dependents for the diagnosis and medically necessary treatment for ASD under the same terms and conditions applied to treatment for "other neurological disorders" in violation of T.C.A. § 56-7-2367. (*Id.* ¶¶ 161-162.) Plaintiff seeks a "judicial declaration" that "BCBST has violated the mandates of T.C.A. § 56-7-2367, and further that compliance with T.C.A. § 56-7-2367 mandates that BCBST provide these services to the members as they would have been provided for persons suffering from other neurological disorders. (*Id.* ¶ 169.)

In Count V of the Complaint, Plaintiff asserts an allegation of unfair and deceptive trade practices under the Autism Equity Act, T.C.A. § 56-7-2367 and Tennessee Consumer Protection Act, T.C.A. § 47-18-101 *et. seq*. Plaintiff contends that BCBST engaged in the following acts prohibited by T.C.A. § 47-18-104, namely: (1) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods and services; (2) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have; (3) advertising goods or services with intent not to sell them as advertised; (4) advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity; (5) using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the goods or services offered, or which may otherwise misrepresent the goods or services in such a manner that later,

-11-

on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods or services to other goods or services; and (6) engaging in any other act or practice which is deceptive to the consumer or to any other person. (Compl. ¶ 176.) Plaintiff contends that such actions entitle him to treble damages and attorneys fees under the Tennessee Consumer Protection Act, T.C.A. § 47-18-109. (*Id.* ¶¶ 177-178.)

**B.     The Parties' Instant Motions**

Defendant BCBST requests that the Court dismiss Plaintiff's Complaint on the following bases: (1) Plaintiff's denial of benefits claim is improperly pled as a class action and that the Complaint should be amended to reflect the only legal claim that the facts averred can support, namely, a discrete, individual denial of benefits to be address on Plaintiff's individual administrative record; (2) Plaintiff's claims for equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and unspecified "breach of fiduciary duty" claims are duplicative of Plaintiff's denial of benefits claim and, therefore, must be dismissed; (3) Plaintiff's claim for declaratory relief under the Tennessee Autism Equity Act must be dismissed because it does not state a viable claim under that statute and is completely preempted by ERISA and, thus, should be converted into a claim for denial of benefits under ERISA § 502(a)(1)(B); and (4) Plaintiff's claim for alleged violation of the Tennessee Consumer Protection Act is also preempted by ERISA and must be dismissed. (Court Doc. 5, Def.'s Brief in S. Mot. to Dismiss at 2.)

Plaintiff opposes the motion to dismiss, arguing: (1) Plaintiff's claims pursuant to § 502(a)(1)(B) of ERISA may be properly brought as a class claim; (2) Plaintiff's claims pursuant to §§ 502(a)(2) and 502(a)(3) of ERISA are not duplicative of Plaintiff's denial of benefits claim and constitute two separate and distinct injuries; (3) Plaintiff's claims

pursuant to the Tennessee Autism Equity Act are not preempted by ERISA; and (4) Plaintiff's claims arising under the Tennessee Consumer Protect Act is not preempted by ERISA because it does not "relate to" an ERISA employee benefit plan. (Court Doc. 11, Pl.'s Opp'n to Def.'s Mot. to Dismiss at 3-16.)

Plaintiff, pursuant to Rule 23 of the Federal Rules of Civil Procedure, seeks to certify the instant lawsuit as a class action against Defendant, individually and on behalf of a class consisting of all persons who are participants in or beneficiaries of an employee benefit plan administered by or provided by Defendant and who have been denied coverage for ABA treatment to an insured person diagnosed with ASD.[1] (Pl.'s Br. in S. Class Cert. at 2.) Defendant opposes Plaintiff's motion for class certification because it contends that the individualized nature of Plaintiff's claims and each purported class member's individual claims requires an individualized review of each class member's respective administrative record. (Court Doc. 15, Def.'s Opp'n to Class Cert at 2.)

## III.  ANALYSIS

As discussed *supra*, before certifying a class, the Court must conduct a "rigorous analysis" into whether the requirements of Rule 23 have been satisfied. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161 (1982); *Sprague v. Gen. Mot. Corp.,* 133 F.3d 388, 397 (6th Cir. 1998) (en banc). Under Rule 23(a), a party seeking class certification must show that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the

---

[1] The Court notes that this class definition differs from the proposed class definition in Plaintiff's Complaint as detailed *supra*. (Compl. ¶ 91.)

-13-

representative parties will fairly and adequately protect the interests of the class. In addition to the prerequisites of Rule 23(a), a party seeking class certification must satisfy one of the three subsections of Rule 23(b).

Here, the Plaintiff has moved for certification under Rule 23(b)(2), which demands a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Plaintiff seeks relief for the proposed class under two separate and distinct provisions of ERISA. First, Plaintiff seeks relief pursuant to ERISA's "catchall" remedial provision which authorizes a civil action by a participant, beneficiary, or fiduciary seeking the following relief: (1) to enjoin any act or practice which violations any provision of ERISA or the terms of the plan; or (2) to obtain other appropriate relief to redress such violations or enforce any provision of ERISA or the terms of the plan. 29 U.S.C. § 1132(a)(3). Section 502(a)(1)(B) of ERISA allows private plaintiffs to sue to recover benefits due to them under the terms of their plans, to enforce rights under the terms of the plan, or to clarify their rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B).

Plaintiff, however, also asserts breach of fiduciary duty claims against BCBST, which also arise under ERISA. To prevail on a breach of fiduciary duty claim under ERISA, a plaintiff must generally prove that the defendant not only breached its fiduciary duty but also caused harm by that breach. *Kuper v. Iovenko*, 66 F.3d 1447, 1457 (6th Cir. 1995). A causal connection between the alleged breached and the alleged harm is thus a necessary element of an ERISA participant's breach of fiduciary duty claim. *Romberio v. Unum Provident Corp.*, No. 07-6404, 2009 WL 87150, at * 6 (6th Cir. Jan. 26, 2009).

-14-

"Where, as here, the alleged breach purportedly results in the wrongful denial or termination of a participant's benefits, the existence of a causal link between the breach and the harm is particularly dependent upon the equities of the participant's claim." (*Id.*) Absent a showing that the benefits were *wrongfully* denied, however, there can be no causal link between an alleged breach and a denial of benefits; and whether a claim for benefits is *wrongfully* denied depends on a number of factors peculiar to the claimant's case. *Id.*; see also, *Hein v. FDIC*, 88 F.3d 210, 224 (3d. Cir. 1996) (dismissing the plaintiff's breach of fiduciary duty claim, explaining that "[b]ecause [the plaintiff] was not entitled to the benefits in the first place, there is no causal link between the alleged breach of fiduciary duty by [the defendants] and the denial of benefits to [the plaintiff]").

As described in detail *supra*, Plaintiff's wrongful denial claims allege a uniform scheme to wrongfully deny benefits or obstruct the processing of claims relating to the use of ABA for the treatment of ASD under BCBST's plan. Specifically, Plaintiff alleges that "the growing number of children diagnosed with autism and ASD in America today is driving BCBST's denial of coverage for the treatment of this condition." (Compl. ¶ 40.) The mere fact that a uniform scheme is alleged, however, does not mean that a class is easily identified or that a class action is necessarily appropriate. *Romberio*, 2009 WL 87150, at * 6-7. ASD is a "complex neurological disability," which is characterized by severe impairment in several areas and "represents a group of neurological disorders." (Compl. ¶¶ 22-26.)

In this instance, Plaintiff's proposed class does not meet the class certification requirements of under Rule 23(a) of the Federal Rules of Civil Procedure. Even if the

-15-

Court were to assume that the class is so numerous that joinder of all members is impracticable and the representative parties will fairly and adequately protect the interests of the proposed class, Plaintiff has not established that there are questions of law or fact common to the class and the claims or defenses of the representative parties are typical of the claims or defenses of the class. Where, as here, the alleged breach purportedly resulted in the wrongful denial or termination of a participant's benefits, the existence of a causal link between the breach and the harm is particularly dependent upon the equities of the participant's claim. *Romberio*, 2009 WL 87150, at * 6-7.

Specifically, the claims of the proposed class fail to meet the typicality requirement set forth in Rule 23 of the Federal Rules of Civil Procedure. The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motor Corp.,* 133 F.3d 388, 399 (6th Cir. 1998). There must be some connection shown, in other words, between the merits of each individual claim and the conduct affecting the class. Absent such a connection, there is no basis upon which to fashion class-wide relief. Where a class definition encompasses many individuals who may have no claim at all to the relief requested, or where there are defenses unique to the individual claims of the class members, the typicality premise is lacking, for – under those circumstances – it cannot be said that a class member who proves his own claim would necessarily prove the claims of other class members. *Romberio*, 2009 WL 87150, at * 8 citing *Beck v. Maximus, Inc.,* 457 F.3d 291, 296 (3d Cir. 2006).

In this instance, the fact that all of the plaintiffs may have been subjected to some or all of Defendant's alleged wrongful practices does not eliminate the need for an individualized assessment as to the ultimate propriety of the benefits decisions affecting

-16-

each and every class member. . *Romberio*, 2009 WL 87150, at * 8; *Sprague,* 133 F.3d at 399; see also, *Reeb v. Ohio Dep't Rehab. & Corr.,* 435 F.3d 639, 644-45 (6th Cir. 2006) (explaining that allegations of a "general policy" of discrimination are inadequate to establish entitlement to class certification; instead, "rigorous analysis" requires precise information about the incidents, people involved, motivations, and consequences regarding each of the named plaintiffs' claims). In light of the required individualized assessment of each class member's ERISA claim, it cannot be said that if the named Plaintiff succeeds in establishing Defendant's liability for breach of fiduciary duty, "so go the claims of the class." Thus, the Court finds typicality is lacking as to the class as defined by Plaintiff in the Complaint as well as to the proposed class defined by Plaintiff in the Motion to Certify.

Moreover, the Plaintiff's motion to certify the class must be denied because the common issue in all the cases – whether ABA treatment is experimental per se – does not predominate over the other factual and legal issues that likely will arise in the cases of other, unnamed plaintiffs. Other questions, including whether ABA treatment was experimental as to a specific plaintiff's condition and whether that plaintiff would, in fact, have benefitted from ABA treatment are not common and would require a highly individualized determination because individuals suffering from ASD and autism "may exhibit the characteristic traits of autism and ASD in any combination, and in different degrees of severity." (Compl. ¶ 35.)

Finally, and in addition, Plaintiff cannot maintain a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure. A class action under Rule 23(b)(2) is referred to as a "mandatory" class action because class members do not have an automatic right to notice or a right to opt out of the class. The defining characteristic of a mandatory class is

-17-

"the homogeneity of the interests of the members of the class." *Reeb,* 435 F.3d at 649. In the instant case, the varied behavioral disorders exhibited by patients with ASD, and the question of whether such behavior disorders may or may not be treated by ABA, fail to meet the requisite homogeneity requirement needed to protect the interests of unnamed class members because such an assessment would require an individualized review of the insured's claim. Accordingly, the Court will **DENY** Plaintiff's Motion for Class Certification.

In light of the Court's decision to deny class certification, the Court will **RESERVE RULING** on Defendant's pending Motion to Dismiss. Plaintiff is **ORDERED** to file an amended complaint which is limited to the individual claims against Defendant by no later than **March 1, 2010.** Each party may, if they choose, file a brief surreply to the pending motion to dismiss that addresses Plaintiff's amended complaint by no later than **March 11, 2010.**

## IV. CONCLUSION

For the reasons explained above, Plaintiff's Motion for Class Certification [Court Doc. 12] is **DENIED.** The Court will **RESERVE RULING** on Defendant's Motion to Dismiss [Court Doc. 4.] Plaintiff is further **ORDERED** to file an amended complaint which is limited to the individual claims against Defendant by no later than **March 1, 2010.** Each party may, if they choose, file a brief surreply to the pending motion to dismiss that addresses Plaintiff's amended complaint by no later than **March 11, 2010.**

SO ORDERED this 19th day of February, 2010.

                                              /s/Harry S. Mattice, Jr.
                                              HARRY S. MATTICE, JR.
                                          UNITED STATES DISTRICT JUDGE